# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROUSSEAU, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1312 (MRK) |
| | : | |
| WINDSOR LOCKS POLICE COMMISSION | : | |
| and TOWN OF WINDSOR LOCKS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

Plaintiff William Rousseau claims that the Town of Windsor Locks and its Police Commission violated his rights under the Fourteenth Amendment by refusing, without due process, his request for retirement credentials indentifying him as a retired Windsor Locks police officer. The parties have both now filed for summary judgment. For the reasons below, the Court GRANTS Defendants' Motion [doc. # 44] and DENIES Plaintiff's Motion [doc. # 42].

## I.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record, *see* Fed. R. Civ. P. 56(c), and it must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

## II.

None of the facts that the Court finds material for the disposition of this case remain in dispute. Mr. Rousseau worked as a police officer for the Town of Windsor Locks from 1983 until 2007. At the time of his retirement in 2007, Mr. Rousseau and the Town signed a Settlement Agreement and Release, in which the Town of Windsor Locks agreed to drop all pending disciplinary actions against Mr. Rousseau and pay Mr. Rousseau a fixed sum of money and certain specified benefits. In exchange, Mr. Rousseau agreed to retire, to drop all pending lawsuits and administrative complaints against the Town, and to "forever forbear" and "waive any right to institute legal proceedings, contractual, administrative or judicial"; in the accompanying Release he freed the Town "from any and all claims, liabilities, demands, and causes of action known and unknown that [he] may have or claim to have against the Town as a result of [his] employment or [his] retirement and separation from employment with the Town. Also, [he agreed] not to file a lawsuit against the Town to assert any such claims . . . ." Defs.' Mot. for Summ. J. [doc. # 44] Ex. D.

In May 2009, Mr. Rousseau wrote to the Chairman of the Windsor Locks Police Commission—the six-member elected body that oversees the Town's Police Department—to

request retirement credentials. Under federal law, a "qualified retired law enforcement officer" who possesses "photographic identification issued by the agency from which the individual separated from service as a law enforcement officer" is allowed to carry concealed firearms. 18 U.S.C. § 926C. The Police Commission's unofficial policy and uniform past practice was to issue such credentials to all retired police offers who requested them. However, in September 2009, the Police Commission refused Mr. Rousseau's request. The Town and the Commission have never afforded Mr. Rousseau a hearing at which he could protest their decision or present evidence in his own support. He has, however, attended and spoken on the subject at the Windsor Lock Police Commission's regular public meetings.

### III.

Defendants claim that this lawsuit is barred by the Settlement Agreement and Release that Mr. Rousseau negotiated with the help of counsel and subsequently signed in 2007. Mr. Rousseau argues in response that the Release did not—and for public policy reasons, could not—bar claims that did not arise until nearly two years after his retirement.

Mr. Rousseau's argument founders on the plain language of his Release, which precludes "causes of action *known and unknown* that [he] may have or claim to have against the Town as a result of [his] employment or [his] retirement and separation from employment with the Town." Defs.' Mot. for Summ. J. [doc. # 44] Ex. D (emphasis added). It is obvious that Mr. Rousseau's present claim results from his employment or retirement from employment with the Town—after all, Mr. Rousseau is claiming that he should get a hearing to show why he is entitled to a document certifying his retirement. Mr. Rousseau has cited *Muldoon v. Homestead Insulation Co.* for the proposition that, as a matter of Connecticut public policy, "the settlement and release of a claim does not cover claims based on events that have not yet occurred." 231 Conn. 469, 481

(1994). But *Muldoon* itself allows for releases that cover "inchoate claims that are in being at the time of release but which have not yet manifested themselves." *Id.* at 481-82. Mr. Rousseau's claim to retirement credentials falls into this latter category.

Mr. Rousseau's interest in obtaining retirement credentials was entirely foreseeable at the time he retired. The Law Enforcement Officers Safety Act ("LEOSA"), *codified at* 18 U.S.C. § 926C, was passed in 2004, giving retirement credentials their present value well before Mr. Rousseau's retirement agreement was reached. Just as Mr. Rousseau negotiated for health benefits and a lump sum payment in 2007, so too could he have requested retirement credentials then, rather than waiting to do so until 2009. The fact that he waited to request this benefit does not make Defendants' denial of his request—or their failure to hold a hearing regarding it—some future occurrence outside the bounds of the agreement. Mr. Rousseau's request and Defendants' response are simply manifestations of an inchoate claim Mr. Rousseau had, but failed to pursue, at the time of his retirement. *See Muldoon*, 231 Conn. at 481. Because Mr. Rousseau's demand for retirement credentials and his demand for a due process hearing concerning those credentials are both claims that result from his retirement from employment with the Town, they are precluded by the unambiguous and definitive language of the settlement agreement Mr. Rousseau signed in 2007. *See Sakon v. Manager*, 113 Conn. App. 802, 804 (Conn. App. Ct. 2009).

## IV.

The Release which bars this lawsuit is itself sufficient to grant Defendants' motion for summary judgment. But the Court notes that Mr. Rousseau's claim would fail even in the absence of that agreement.

To show that he was deprived of property without due process of law, Mr. Rousseau would have to show that he had a "legitimate claim of entitlement" to the benefit in question. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The Second Circuit has held that "the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985). At oral argument, Mr. Rousseau's counsel argued—quite rightly—that this cannot mean that someone's property right entitling him to due process can be defeated simply by finding that the process afforded might not have terminated in his favor. This would put the substantive cart before the procedural horse.

The Second Circuit has clarified, however, that this is not what the *Yale Auto Parts* test involves:

> Application of the [*Yale Auto Parts*] test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case . . . . Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest . . . . Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter for the courts.

*RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989). The question, in other words, is not whether Mr. Rousseau most likely would have won or not, had he been offered a hearing. The relevant question under *Yale Auto Parts* and its successors is whether there is anything that would have constrained the Commission from making the decision it did, even after a hearing.

Mr. Rousseau has not pointed to any law or regulation that could have constrained "the opportunity of the [Commission] to deny issuance" of his retirement credentials. *Id*. Thus, the Court need not evaluate (or ask a jury to evaluate) the evidence Defendants have offered suggesting that they would have come to the same decision regardless of the process afforded. Mr. Rousseau's claimed property interest in the credentials fails not on the merits of Defendants' decision but because Defendants had unfettered discretion in making that decision.

Because Mr. Rousseau's due process claim is barred by his Settlement Agreement and would fail as a matter of law even were it not barred, Mr. Rousseau's Motion for Summary Judgment [doc. # 42] must be DENIED; Defendants' Motion for Summary Judgment [doc. # 44] is GRANTED. **The clerk shall enter judgment for Defendants and close this case.**

**IT IS SO ORDERED.**

  /s/  Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut: July 31, 2012.**